UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANELLE PRUETT,

          Plaintiff,

  v.

MICHAEL J. ASTRUE , Commissioner of Social Security Administration,

          Defendant.

CASE NO.   C07-5188JKA

ORDER REMANDING ADMINISTRATIVE DECISION

This matter has been referred and reassigned to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff brings the instant action pursuant to 205(g) of the Social Security Act ("the Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of the administration's final decision denying plaintiff's application for disability insurance benefits. After reviewing the record, the court finds and orders as follows:

    1. It is very important to point out that judicial review of a social security case is based upon the pleadings and the transcript of the record. 42 U.S.C. § 405(g). Jurisdiction of this court on review is not to reweigh the evidence before the ALJ or to substitute its own judgment for that of defendant. <u>Hall v. Secretary of Health, Education, and Welfare</u>, 602 F.2d 1372, 1374 (9th Cir.1979). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. 42 U.S.C. § 405(g); <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such

ORDER
Page - 1

relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).

After carefully reviewing the record, the undersigned finds the ALJ's decision is not properly supported by substantial evidence nor free of significant legal error. The matter must be remanded for further consideration.

2. Plaintiff argues the following issues in her Opening Brief: (i) her mental impairments meet the severity criteria of Listing 12.05(C); (ii) the ALJ improperly concluded Plaintiff's PTSD, ADHD, Bipolar Disorder and Psychotic Disorder are non-severe; (iii) the ALJ failed to provide convincing or legitimate reasons for rejecting the medical opinions of Dr. Price, Dr. Bremer, Dr. Satter, Dr. Ang, Nurse Nelson, Dr. Harrison, Dr. Lysak, and Dr. Lewy; (iv) Dr. Lewy is not an impartial medical expert; (v) the ALJ failed to properly consider the lay testimony; and (vi) the testimony of the vocational expert is based on an incomplete hypothetical question.

Defendant does not directly respond to all of these arguments. Instead, Defendant focuses the court's attention on the issue of Plaintiff's credibility, which the ALJ discusses at length in his opinion and which is the basis for the ALJ's rejection of medical evidence that suggests Plaintiff is not able to continue working. Plaintiff does not dispute the ALJ's finding that Plaintiff's credibility is questionable, but asserts that this is just one of the symptoms of Plaintiff's mental health and is not a legitimate basis to deny her application for social security benefits.

3. The issue of credibility of Plaintiff in this case is very significant. The court notes it is the ALJ who is responsible for determining credibility, <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir. 1999). Albeit, the ALJ's credibility findings must be properly supported by the record, and "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)(*quoting* <u>Elam v. Railroad</u>

Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)).

Relying on substantial medical evidence, the ALJ discredited Plaintiff's allegations of total disability. He relied on Dr. Wingate, a psychologist, who examined Plaintiff on June 16, 2004 (Tr. 227-36). On the test of memory malingering, Plaintiff scored in the less than chance range, at 9/50 on the second trial (Tr. 236). Dr. Wingate noted that even very brain damaged persons score around 48/50 (Tr. 236). Dr. Wingate concluded that Plaintiff obviously knew the correct answer, but intentionally chose the incorrect answer (Tr. 230, 236). The ALJ also relied on Dr. Harrison and Dr. Lewy to support his finding that Plaintiff was not truthful, specifically during medical examinations.

Dr. Harrison, another psychologist, examined Plaintiff on October 25, 2004. She found Plaintiff demonstrated questionable motivation and effort (Tr. 311). Dr. Harrison expressed concern that Plaintiff might have relapsed into alcohol abuse, but determined that Plaintiff intentionally over-represented problems and symptoms (Tr. 311). Dr. Lewy, the medical expert called to testify in this matter at the administrative hearing, referred to Dr. Wingate's memory malingering findings, noting that a pure chance score on this "either-or" test would be 25/50 (Tr. 542). The only way to interpret Plaintiff's score of 9/50 was that she was purposely trying to give the wrong answers (Tr. 542). Dr. Lewy felt that the low intellectual scores of record were not accurate, but affected by Plaintiff's conscious effort to give incorrect answers (Tr. 542-43, 556, 559).

In addition to the medical opinions regarding Plaintiff's credibility, the ALJ also relied on the inconsistency in Plaintiff's statements made to her physicians. For instance, the ALJ noted completely different descriptions of her substance abuse history when she was examined by Dr. Price in September 2003 (to whom she reported very little problem with drug use) and when she was examined by Dr. Sattar in November of the same year (she reported a long history of drug abuse) (Tr. 23).

In sum, the ALJ properly assessed Plaintiff's credibility. But, as explained below it does not provide a sufficient basis in this case for the ALJ to reject all of the physician's opinions that support a more severe impairment than assigned by the ALJ.

4. The ALJ's evaluation of the medical evidence and his assessment of Plaintiff's residual functional capacity are not properly supported by substantial medical evidence. The ALJ determined that Plaintiff retained the following residual functional capacity (RFC): Lift and carry 50 pounds occasionally,

25 pounds frequently; sit, stand and/or walk 6 hours per day; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; must avoid hazards (machinery, heights, etc.); only limited contact with the public; able to perform detailed, but not complex work (Tr. 25, 27 Finding 6).

The ALJ did not rely on any medical opinions that reflect these limitations. The ALJ explained that his assessment was different than that medical opinions of record. For instance the ALJ explained that the DDS consultants and Dr. Price found Plaintiff capable of working, but restricted her to simple, repetitive tasks. The ALJ did not restrict her to simple, repetitive tasks. The ALJ explained that these physicians supported this greater limitation based on their reliance on Plaintiff's subjective statements to support this more restrictive limitation. But, the undersigned does not agree.

Although an ALJ may reject medical opinions, or portions of an opinion, that are based on unreliable subjective reports from a patient (Tonapetyan v. Halter, 242 F.3d 1144, 1147-48 (9th Cir. 2001): Morgan v. Commissioner of SSA, 169 F.3d 595, 599-600 (9th Cir. 1999), Fair v. Bowen, 885 F.2d 597, 605 (9th Cir.1989)), here, the ALJ discredited all of the medical evidence of record. Not one physician who examined, treated or even consulted on the case assigned limitations similar to the ALJ.

Somewhat confusing to the court is the ALJ's inclusion of malingering as a severe impairment, but he does not assign or explain any limitations related to malingering. The ALJ relies on malingering, not as a disease or diagnosis, but only to discredit Plaintiff's claim of disability. In contrast, several physicians discussed plaintiff's malingering, and they discussed or assigned limitations in light of this diagnosis or problem. As noted above, all physicians who assigned limitations found greater limitations than the ALJ. For example, both Dr. Bremer and Dr. Harrison were aware of Plaintiff's credibility issue, but they both incorporated this knowledge into their assessments and limitations. Dr. Bremer assessed her functioning to be fair to poor in virtually all areas. Dr. Harrison assessed several "moderate" limitations of mental functioning. Significantly, the ALJ did not have any physician or record who made similar limitation findings to his own. The ALJ's findings are not supported by the medical evidence, and the matter needs to be remanded to allow the administration the opportunity to reevaluate the medical evidence

5. Dr. Lewy was called to testify at the administrative hearing as a medical expert, presumably an independent medical expert. Plaintiff objected and raised the issue of Dr. Lewy's independence at several

1  opportunities, including at the hearing.  Plaintiff takes issue with the fact that Dr. Lewy is a physician
2  who works under contract for the administration, and thus, has a conflict of interest in testifying as a
3  medical expert in this case.  The ALJ rejected Plaintiff's argument, explaining that Dr. Lewy's contracted
4  services were limited to "quality assurance" (i.e., administrative sufficiency)  reviews, and he was not
5  involved in making any decisions in the cases.  The ALJ stated Plaintiff's argument appeared to be
6  "gamesmanship", rather than a serious concern.

7  Under 20 C.F.R. 4040.1527(f)(2)(iii) "[a]ll implications of possible conflict of interest between
8  medical or psychological consultants and their medical or psychological practices will be avoided.
9  [omitted]. Physicians and psychologists who do review work for us will not perform consultative
10  examinations for us without our prior approval."

11  Dr. Lewy works 30 hours per week under contract for the administration to review cases for
12  quality assurance.   His role in this case was limited to being a  medical expert, and their does not appear
13  to be a direct conflict of interest (i.e., he has not been involved in the case in any prior proceeding,
14  examination or consultation).   The regulation does not expressly prohibit his participation.  However, the
15  court notes that Dr. Lewy would probably be prohibited from doing any "quality assurance" work on this
16  matter for the administration.   Despite finding no direct conflict of interest, because this matter is being
17  remanded for further review, the administration should call a different medical expert to offer testimony
18  in this matter to avoid any appearance of a conflict of interest.

19  6. Accordingly, the Court remands the matter to the Social Security Administration for further
20  consideration fo the medical evidence.  On remand the matter should be assigned to another ALJ and a
21  different medical expert should also be utilized.

22  DATED this 20th day of November 2007.

24  */s/ J. Kelley Arnold*
    J. Kelley Arnold
25  U.S. Magistrate Judge